UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PEGGY McGUIRE,<br><br>  Plaintiff,<br><br>v.<br><br>H. GEORGE LEVY, M.D., PC, et al.,<br><br>  Defendants. | Case No. 24-cv-11862<br><br>Honorable Robert J. White |

**OPINION AND ORDER DENYING DOCTOR ELIZABETH HATFIELD'S MOTION FOR SUMMARY JUDGMENT**

I. Introduction

Peggy McGuire commenced this medical and dental malpractice action against, among others, Doctor Elizabeth Hatfield. The complaint alleges that Dr. Hatfield misdiagnosed McGuire's adenoid cystic carcinoma, a form of cancer, as arthralgia of the left temporomandibular joint.

Before the Court is Dr. Hatfield's motion for summary judgment. (ECF No. 17). McGuire responded in opposition. (ECF No. 22). Dr. Hatfield filed a reply. (ECF No. 24). The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is denied.

II.    <u>Background</u>

    A.    *Factual History*

Dr. Hatfield is a dentist who specializes in orofacial pain management. (ECF No. 17-2, PageID.170). McGuire first visited her in March 2021 after exhibiting increased "swelling and pain in the left pre-auricular/TMJ area." (*Id.*). Dr. Hatfield diagnosed McGuire with arthralgia of the left temporomandibular joint, masticatory myalgia, and tendonitis. (*Id.*, PageID.175). She prescribed the use of an "intraoral orthopedic appliance" to alleviate McGuire's pain. (ECF No. 17-3, PageID.178, ECF No. 17-4, PageID.181). When McGuire's pain persisted, Dr. Hatfield referred her for an MRI of the temporomandibular joint. (ECF No. 17-6, PageID.192). The MRI, which was conducted on August 21, 2021, revealed some degeneration but no indication of cancer. (ECF No. 17-7, PageID.196-97). Dr. Hatfield last treated McGuire on August 30, 2021. (*Id.*, PageID.195-97).

After treating with several other healthcare providers over the course of the next two years, McGuire's condition still had not improved. (ECF No. 1, PageID.8, ¶¶ 23-27). On April 11, 2023, McGuire went to the ProMedica Monroe Regional Hospital complaining of "recurrent falls" and "visual and auditory hallucinations." (*Id.*, PageID.8, ¶¶ 28-29; ECF No. 17-8, PageID.214). She underwent a brain MRI scan that indicated an "[a]bnormal infiltrative left parotid lesion." (ECF No. 17-8,

2

PageID.214). The evaluating radiologist "suspect[ed]" the presence of "adenoid cystic carcinoma" and recommended a tissue biopsy. (*Id.*).

McGuire underwent a fine needle biopsy on May 23, 2023, that confirmed the presence of "baseloid cells . . . suspicio*us* for adenoid cystic carcinoma." (ECF No. 22, PageID.335). She then visited Doctor Ellen L. Baxter on May 30, 2023. (*Id.*, PageID.336-37). Dr. Baxter informed McGuire of the presence of adenoid cystic carcinoma and conferred with her colleagues to "determine if PET imaging is appropriate to determine metastasis." (*Id.*, PageID.336). McGuire alleges that the cancer metastasized to her brain and other parts of her neck and ear. (ECF No. 1, PageID.9, ¶ 34).

B.   *Procedural History*

McGuire mailed a notice of intent to file a claim to Dr. Hatfield on November 8, 2023. (ECF No. 17-1, PageID.156-68). She filed this lawsuit in Monroe County Circuit Court on May 9, 2024. (ECF No. 1, PageID.5). The complaint asserts, among other things, a single cause of action for medical malpractice against Dr. Hatfield. (*Id.*, PageID.14-15, ¶¶ 56-60) (Count V).

McGuire also named several other healthcare providers as defendants. The United States Secretary of Health and Human Services (through his designee) deemed two of these providers as "employees of the United States Public Health Service." (ECF No. 1, PageID.2; ECF No. 1-2, PageID.29-34). And the Attorney

3

General's designee certified that the providers were "acting within the scope of their employment" when they treated McGuire. (ECF No. 1, PageID.3; ECF No. 1-3, PageID.35-36). Because the providers are eligible for coverage under the Federal Tort Claims Act, the government removed the case to the United States District Court for the Eastern District of Michigan. (ECF No. 1).

Dr. Hatfield now moves for summary judgment on the ground that the medical malpractice claim asserted against her is untimely. (ECF No. 17).

III.   Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV.   Analysis

    A.   *The Implication of Federal Tort Claims Act Removal for State Law Claims Asserted Against Non-Federal Defendants*

The Federal Tort Claims Act (FTCA) "permits the government to be sued for injuries caused by the negligence of government employees, acting within the scope of their employment, to the same extent that a private individual would be liable for such negligence." *Brown v. United States*, 462 F.3d 609, 611 (6th Cir. 2006); *see also* 28 U.S.C. § 1346(b). The statute authorizes the Attorney General to remove "any

4

such civil action or proceeding commenced in a State court" to the federal district court "embracing the place wherein" the state court litigation "is pending." 42 U.S.C. § 233(c); *see also Wilson v. Big Sandy Health Care, Inc.*, 576 F.3d 329, 334 (6th Cir. 2009). Once the case is removed to federal court, state law provides the substantive framework for analyzing the FTCA claims asserted against the government. *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019).

In multiple defendant cases like this one – involving both the government and non-federal defendants – any state law claims asserted against the non-federal defendants remain outside the FTCA's scope. *Cf. Andrews v. Hurley Bd. of Hosp. Managers for Flint*, No. 21-10156, 2021 U.S. Dist. LEXIS 218152, at *2-3 (E.D. Mich. Feb. 19, 2021) (remanding state law claims between non-diverse, non-federal litigants to state court for lack of subject matter jurisdiction after the plaintiff stipulated to the dismissal of the FTCA claims against the government). Here, no one disputes that Michigan law supplies the governing standards for McGuire's medical malpractice claim asserted against Dr. Hatfield, who is a non-federal defendant.

> B.  *Michigan's Statute of Limitations for Medical Malpractice Claims*

Because Michigan law controls, the Court must look to that state's statute of limitations to resolve the current motion. Michigan's statute of limitations for medical malpractice lawsuits is two years. Mich. Comp. Laws § 600.5805(8). The

5

claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." Mich. Comp. Laws § 600.5838a(1). Even still, medical malpractice plaintiffs may commence the action "within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." Mich. Comp. Laws § 600.5838a(2).

To initiate the lawsuit, the plaintiff must provide a "written notice" of intent to file the claim to the defending physician "not less than 182 days before the action is commenced." Mich. Comp. Laws § 600.2912b(1). The statute of limitations is tolled during the 182-day notice period if it would otherwise expire during that time. Mich. Comp. Laws § 600.5856(c); *see also Hubbard v. Stier*, 345 Mich. App. 620, 626 (2023). When "the notice period ends and the time for the plaintiff to bring a claim once again begins to run, it will run for the number of whole days remaining in the limitations period when the notice of intent was filed, plus one day to reflect the fractional day remaining when the notice of intent itself was filed." *Haksluoto v. Mt. Clemens Regional Med. Ctr.*, 500 Mich. 304, 322-23 (2017) (cleaned up); *see also Hubbard*, 345 Mich. App. at 626.

    C.    *The Medical Malpractice Claim Asserted Against Dr. Hatfield Is Timely*

Turning to the merits, the parties' arguments focus on Michigan's six-month discovery rule for medical malpractice claims. Again, that rule authorizes the

6

commencement of medical malpractice claims "within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later." Mich. Comp. Laws § 600.5838a(2). Dr. Hatfield contends that the statute of limitations should run from April 11, 2023 – the date of the brain MRI scan. McGuire counters that the limitations period commenced on May 30, 2023 – the date Dr. Baxter informed her about the presence of adenoid cystic carcinoma.

Michigan courts apply the "possible cause of action" test to determine whether a medical malpractice action is commenced within the discovery rule. *Bowman v. St. John Hosp. & Med. Ctr.*, 508 Mich. 320, 336 (2021). Drawing from its own precedent, the Michigan Supreme Court has identified three ways medical malpractice plaintiffs may become aware of a possible cause action: either (1) through their own subjective knowledge of a possible "causal connection between [the] plaintiff's injury and the defendant's breach," (2) when they learn about facts from which they objectively "could have inferred, without speculation or conjecture, that an earlier professional might have committed malpractice," *i.e.*, drawing an objectively reasonable inference, or (3) when they learn about facts that arouse enough suspicion to trigger a "duty to investigate" further, *i.e.*, exercising objectively reasonable diligence. *Id.* at 341-42.

With respect to the third method, "facts arouse suspicion" – and initiate the duty to investigate – "when they make a plaintiff wonder whether the defendant is

7

responsible" for the asserted injury. *Id.* at 342. "[W]hether a plaintiff's suspicions have been aroused often will depend not only on the knowable facts but also on what a patient learns and reasonably understands from her doctors." *Id.* at 343. It's a fact-based inquiry that requires courts to assess "the totality of information available to the plaintiff, including his own observations of physical discomfort and appearance, his familiarity with the condition through past experience or otherwise, and his physician's explanations of possible causes or diagnoses of his condition." *Id.* (quotation omitted). The plaintiff must, at the very least, "possess . . . some minimum level of information that, when viewed in its totality, suggests a nexus between the injury and the negligent act." *Id.* (quotation omitted).

Here, the record is unclear as to when McGuire learned about the April 11 brain MRI results. Medical notes indicate that Doctor Barnett Kantz, an internal medicine physician affiliated with ProMedica Monroe Regional Hospital, may have informed McGuire about the MRI results as early as April 24. (ECF No. 24-2, PageID.391-92, 402-03). But even assuming she knew the MRI indicated the presence of adenoid cystic carcinoma on April 11, no reasonable jury could conclude that she "discover[ed] or should have discovered the existence" of her claim at that time. Mich. Comp. Laws § 600.5838a(2).

Turning to the first method for ascertaining a "possible cause action," McGuire could not have subjectively known on April 11 of a possible "causal

8

connection" between her "injury" (the physical and emotional effects stemming from her late-stage cancer diagnosis) and Dr. Hatfield's "breach" (her misdiagnosis of the cancer as arthralgia of the left temporomandibular joint). That's because the MRI results did not inform McGuire whether the cancer was most likely present when Dr. Hatfield last treated her on August 30, 2021. And without that information, McGuire could not have known whether Dr. Hatfield possibly misdiagnosed her condition, *i.e.*, breached the duty to provide McGuire with reasonable medical care, let alone whether that breach possibly caused her injuries.

Nor could McGuire have objectively "inferred" from the MRI results alone, "without speculation or conjecture," that Dr. Hatfield "might have committed malpractice." *Bowman*, 508 Mich. at 341. Again, the MRI results did not inform McGuire whether the cancer was most likely present when Dr. Hatfield last treated her. So she possessed no factual basis from which to objectively infer that Dr. Hatfield might have misdiagnosed her cancer and that the misdiagnosis possibly caused her injuries.

That leaves the final method for discovering a possible cause action, *i.e.*, the exercise of objectively reasonable diligence. Viewing the evidence in McGuire's favor, a reasonable jury could infer that the April 11 MRI results should have aroused enough suspicion to, at the very least, trigger her "duty to investigate" whether Dr.

9

Hatfield was "responsible" for her injuries. *Id.* at 342. McGuire's post-MRI conduct meets this standard.

After obtaining the MRI results, McGuire underwent a fine needle biopsy on May 23 that revealed "baseloid cells" that were "*suspicious* for adenoid cystic carcinoma." (ECF No. 20, PageID.252) (emphasis added). She then consulted with Dr. Baxter on May 30. Dr. Baxter informed McGuire of the presence of adenoid cystic carcinoma; she counseled McGuire about her prognosis; and advised her regarding the "risks and benefits of treatment options, impressions, [and the] importance of compliance with treatment and risk factor reductions." (*Id.*, PageID.253-54).

Construing this timeframe in McGuire's favor, and considering "the totality of information available" to her, *Bowman*, 508 Mich. at 343, the earliest a reasonable jury could conclude that McGuire "discover[ed] or should have discovered the existence" of her claims is May 30, 2023 – the date she learned about her diagnosis from Dr. Baxter.

Yet, even if a reasonable jury could infer that McGuire should have discovered the existence of her claims from the May 23 biopsy results (which, based on this record, it could not), her claims would still remain timely.[1] A May 23 discovery date

---

[1] This contingency presumes McGuire knew about the biopsy results the same day the procedure was performed, which seems unlikely given that a pathologist would

would set November 23, 2023 as the latest date to serve the notice of intent. Mich. Comp. Laws § 600.5838a(2).  McGuire served the notice of intent on November 8, 2023 – leaving days 15 remaining on the statute of limitations after the mandatory 182-day notice period expired, plus one extra day "to reflect the fractional day remaining when the notice of intent itself was filed." *Haksluoto*, 500 Mich. at 322-23; *see also* Mich. Comp. Laws §§ 600.2912b(1), 600.5856(c).  Since the 182-day notice period expired on May 8, 2024, the last day for McGuire to file the complaint was May 24, 2024 (May 8 + 15 days + 1 day = May 24).  She filed the complaint in Monroe County Circuit Court on May 9, 2024 – 15 days before the limitations period expired.  So her medical malpractice claim against Dr. Hatfield is timely as a matter of law.

The doctor, nonetheless, views things differently.  She urges the Court to follow *Solowy v. Oakwood Hosp. Corp.*, 454 Mich. 214 (1997), where the Michigan Supreme Court held that the plaintiff's medical malpractice action was untimely because she should have discovered a "possible cause of action" even before her treating dermatologist confirmed the existence of basal cell carcinoma through a biopsy.

---

need some time to analyze the extracted tissue.  At any rate, nothing in the record indicates that McGuire knew about the biopsy results on May 23.

11

But *Solowy* is materially different from this case in two significant respects. *First*, the plaintiff in *Solowy* suffered from basal cell carcinoma previously and knew that her most recent symptoms "were identical" to those she had experienced before. *Id.* at 227. And *second*, the plaintiff's treating dermatologist informed her, even before the biopsy, that the suspect lesion could be a recurrence of the cancer. *See id.* at 217. The Michigan Supreme Court relied on both these factors to decide that the plaintiff should have discovered a possible cause of action at the time the treating dermatologist informed her the cancer may have returned, not when the dermatologist verified the cancer's existence through a biopsy. *See id.* at 227-28.

Neither of these factors are present here. McGuire never suffered from adenoid cystic carcinoma previously, so she was unfamiliar with the symptoms. And the record is unclear whether any healthcare provider informed McGuire about the presence of cancer before her May 30 conversation with Dr. Baxter.

Because no reasonable jury could conclude that McGuire's medical malpractice claim against Dr. Hatfield is untimely, that cause of action is sufficient to withstand summary judgment. Accordingly,

IT IS ORDERED that Dr. Hatfield's motion for summary judgment (ECF No. 17) is denied.

Dated: November 17, 2025          s/ Robert J. White  
                                                                Robert J. White  
                                                                United States District Judge